

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable E. G. Garvey
County Auditor
Bexar County
San Antonio, Texas

Dear Sir:

Opinion No. O-5475
Re: Constitutionality of House
Bill No. 510, Acts of the
48th Legislature, Regular
Session, 1943.

Your letter of July 21, 1943, requesting the opinion of this department on the questions stated therein reads in part as follows:

"The last Legislature by H. B. No. 510, Chap. 181, amended Section 18 of the Bexar County Road and Bridge Law, which law is Chap. 137, of the Special Laws of the Regular Session of the 42nd Legislature, which was amended by Chap. 44 of the Special Laws of the Regular Session of the 43rd Legislature; said amendment to Section 18 reads as follows:

"'That all moneys from any source whatsoever coming into the Road and Bridge Fund of Bexar County, other than those moneys received from direct ad valorem taxation, shall by the Commissioners Court be apportioned equally to each of the Commissioners precincts of said County. That all moneys received from direct ad valorem taxation, automobile licenses, fines or from any other source fixed by law coming into the Road and Bridge Fund of said County shall be expended as provided for by law, and shall not be transferred under any circumstances to any other fund. That all moneys coming into the Road and Bridge Fund of said County from the sale of bonds, or warrants, shall specifically be allocated for a definite project prior to the authorization or issuance

Honorable E. C. Garvey, page 2

thereof. That any and all moneys now on hand and hereafter coming into the Road and Bridge Fund of Bexar County, including those moneys received from direct taxation, or from any source whatsoever, shall be expended for only those purposes to build and maintain Roads in Bexar County and chargeable against the Road and Bridge Fund in each respective precinct, and such funds shall not be transferred to any other fund or funds, or to be used for any other purpose.'

"Our Constitution, Article 3, Sec. 56, provides, among other things, 'The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing: . . . regulating the affairs of counties, cities, towns, wards or school districts.' 'And in all other cases where a general law can be made applicable no local or special law shall be enacted.'

"Article 8, Section 9, of the Constitution, which provides for the levying of taxes for specified purposes, among other things:

"'And the Legislature may pass local laws for the maintenance of the public roads and highways without the local notice required for special or local laws.'

"The Supreme Court in the case of Altgelt vs. Gutzeit, reported in 201 S. W. Reporter, at page 400, in construing a provision of a previous special Road and Bridge Law for Bexar County, held that such provision providing for the salaries of Commissioners was unconstitutional, as the same was an attempt upon the part of the Legislature by a special law to regulate the affairs of the County which was within the inhibition of Section 56, of Article 3 of the Constitution.

"In the case of Austin Bros. vs. Patton, Commission of Appeals, 288 S. W. at page 182, the Houston County Special Road Law, as to the supervision

of roads and apportionment and expenditure of funds, was held unconstitutional as a special law regulating the affiars of the County.

"In view of the above Articles and the Constitution and the holding of the Supreme Court in the above cited cases, you are requested to render for me an opinion as to whether or not the amendment to Section 18 of Chap. 137 of S. B. No. 575, Acts of the 42nd Legislature, Regular Session, is operative to prohibit the transfer of funds, coming into the Road and Bridge Fund, to other funds of the County. Or, is such Section 18 unconstitutional under the provision of Article 3, Section 56, of the State Constitution?

". . . ."

The County Road and Bridge Fund proper is derived from county taxes, automobile registration fees and fines and forfeitures. Disposition of that portion of the county road and bridge fund consisting of automobile registration fees is governed by Section 10 of Article 6675a, Vernon's Annotated Civil Statutes. The pertinent provisions of said section read as follows:

". . . .'None of the monies so placed to the credit of the Road and Bridge Fund of a county shall be used to pay the salary or compensation of any County Judge or County Commissioner, but all said monies shall be used for the construction and maintenance of lateral roads in such county under the supervision of the County Engineer, if there be one, and if there is no such engineer, then the County Commissioners' Court shall have authority to command the services of the Division Engineer of the State Highway Department for the purpose of supervising the construction and surveying of lateral roads in their respective counties. All funds allocated to the counties by the provisions of this Act (Articles 6675a-1 to 6675a-14; P. C. Art. 807a) may be used for the counties in the payment of obligations, if any, issued and incurred in the construction of or the improvement of all roads, including State Highways of such counties and districts therein; or the improvement of the roads comprising the County Road system."

Honorable E. G. Garvey, page 4


The case of Stovall v. Shivers, Civ. App., 75 S. W. (2d) 276, affirmed (Com. App.) 103 S. W. (2d) 363, on page 367 of the latter opinion, contains the following statements with respect to the above quoted section:

"As to that portion of automobile registration fees retained by Van Zandt County, Article 6675a-10, Vernon's Annotated Civil Statutes, expressly provides how same shall be expended, and for that reason it is obvious that Article 6740 has no application to same. . . .

"By article 2342 of the Revised Statutes, it is provided that the several commissioners, together with the county judge, shall compose the 'commissioners court.' Such court is manifestly a unit, and is the agency of the whole county. The respective members of the commissioners court are therefore primarily representatives of the whole county, and not merely representatives of their respective precincts. The duty of the commissioners court is to transact the business, protect the interest, and promote the welfare of the county as a whole. Among the powers conferred upon such court by article 2351 are the following: The power to lay out and establish, change and discontinue roads and highways, the power to build bridges and keep them in repair, and the power to exercise general control over all roads, highways, ferries, and bridges in their counties. They have the power to levy a tax not to exceed 15 cents on the $100 valuation for roads and bridges. This fund is, of course, for the benefit of all roads and bridges of the county. These provisions of the law, as well as others which might be mentioned, clearly contemplate that the commissioners court of each county shall regard the roads and highways of the county as a system, to be laid out, changed, repaired, improved, and maintained, as far as practical, as a whole to the best interests and welfare of all the people of the county. It is clearly contemplated that all roads and bridges of the county shall be maintained, repaired, and improved when necessary, as the conditions may require, regardless of the precinct in which same may be located, so far as the funds will equitably justify."

Honorable E. G. Garvey, page 5


As for that portion of the county road and bridge fund consisting of county taxes, Article 6740, Vernon's Annotated Civil Statutes, provides:

"The commissioners court shall see that the road and bridge fund of their county is judiciously and equitably expended on the roads and bridges of their county, and, as nearly as the condition and necessity of the roads will permit, it shall be expended in each county commissioners precinct in proportion to the amount collected in such precinct. Money used in building permanent roads shall first be used only on first or second-class roads, and on those which shall have the right of way furnished free of cost to make as straight a road as is practicable and having the greatest bonus offered by the citizens of money, labor or other property."

This article has been construed by the Commission of Appeals of the State of Texas. Stovall v. Shivers, supra. We quote therefrom as follows:

"It will be observed that the article in question provides that the road and bridge fund shall be judiciously and equitably expended on the roads and bridges of the county, and, as nearly as the condition and necessity of the roads will permit, shall be expended in each county commissioners precinct in proportion to the amount collected in such precinct. In our opinion, there is obviously nothing in this article which compels the commissioners court to divide the road and bridge fund according to any fixed mathematical formula, and apportion same in advance for the purpose of being expended in any given precinct. The use of the word 'expended' to our minds clearly suggests that said funds shall be apportioned and paid out from time to time as the necessity for their use arises in the ordinary administration of the county affairs. . . .

"Notwithstanding this, the commissioners court must give effect to said article 6740 except when

Honorable E. G. Garvey, page 6

the necessities of the roads and bridges require
a departure from it. That article requires that
the road and bridge funds of all counties shall
be judiciously and equitably expended. It further
requires that such funds shall, as nearly as the
condition and necessity of the roads will permit,
be expended in each commissioners precinct in pro-
portion to the amount collected in such precinct.
The dominant purpose of this statute seems to be
to require that the road and bridge fund shall be
expended in each commissioners precinct in pro-
portion to the amount collected therein. In this
regard, the statute means that each precinct shall
prima facie be entitled to its own funds, and in
the absence of any reasons to the contrary they
should be so divided and expended. However, the
duty to expend the funds in the proportion above
mentioned is not an absolutely inflexible one.
This is evident from the fact that the dominant
purpose of the statute is qualified to the extent
that the court by clear implication is given the
right to expend the road and bridge fund in a pro-
portion other than in the proportion in which they
are collected when the conditions of the roads in
the respective precincts creates a necessity so to
do. We think, however, that the requirement to
expend the fund in the proportion mentioned cannot
be avoided except in cases or conditions of neces-
sity. Of course, the commissioners court has the
right to exercise its sound judgment in determin-
ing the necessity, but it cannot act arbitrarily
in regard to such matter."

It will be noted that House Bill No. 510, supra, ex-
pressly provides "that all money from any source whatsoever
coming into the road and bridge fund of Bexar County, other
than those moneys received from direct ad valorem taxation,
shall by the Commissioners Court be apportioned equally to each
of the Commissioners precincts of said County." Said Act also
further provides in effect that all moneys received from direct
ad valorem taxation, automobile license fees, fines or for-
feitures or any other source fixed by law coming into the road
and bridge fund of said county shall be expended as provided
for by law, and shall not be transferred under any circumstances

Honorable E. G. Garvey, page 7

to any other fund. As the road and bridge fund is a constitutional fund it is our opinion that under the holding of the Supreme Court in the case of Carroll v. Williams, 202 S. W. 504, the commissioners' court does not have any legal authority to transfer money from the road and bridge fund to another fund, or to expend for one purpose, tax money raised ostensibly for another purpose. In other words, the commissioners' court could not legally transfer money from the road and bridge fund to any other fund notwithstanding the provisions of House Bill No. 510, supra.

Referring to Article VIII, Section 9 of the Constitution, it is stated in the case of Austin Brothers v. Patton, 288 S. W. 182:

". . . It authorizes the Legislature to pass local road laws for a restricted purpose -- the maintenance of the public roads and highways. As shown above, our Supreme Court has held that the words, 'the maintenance of public roads,' include the laying out, opening, and construction of new roads. Therefore the authority conferred by the constitutional amendment carries with it the right to regulate the affairs of the county only in such respects as are necessarily and appropriately connected with or incidental and subsidiary to the object of such limited power -- the maintenance, including the laying out, opening and construction of public roads. It does not authorize the subtraction, by local or special laws, of powers from county commissioners and the commissioners' court conferred by general laws. It does not authorize a change in the financial system of counties fixed by general laws. It does not authorize the creation of offices and the clothing of those officers with functions already performed by existing officers as provided for by general laws. None of these are incidental or necessary to the maintenance, laying out, opening, and construction of roads. It merely authorizes the application of the financial system and the governmental machinery already existing to the action authorized thereby. The financial system and the governmental machinery already existing under general laws are ample for all

380

such activities. If the amendment had been intended to nullify the clause of section 56 of article 3, prescribing that the Legislature should not pass any local or special law regulating the affairs of counties, it would have been a simple matter to have added to it, at the time of its submission, some such words as, 'and provide for the management and control thereof,' as was done in the amendment authorizing the Legislature to provide for the formation of school districts by special laws."

After carefully considering House Bill No. 510, supra, it is our opinion that said Act cannot be sustained as a special road law under Article VIII, Section 9 of the Constitution because none of the powers or restrictions conferred on the commissioners' court are incidental or necessary to the maintenance, laying out, opening, and construction of roads. However, on the other hand, the Act is an attempt to subtract from the powers of the commissioners' court pertaining to the expenditure and allocation of the road and bridge fund of the county conferred by general laws.

It is our further opinion that House Bill No. 510, supra, violates Article III, Section 56 of the Constitution, forbidding the regulation of county affairs by local or special laws. Therefore, we are of the opinion that said Act is unconstitutional and so hold. (See the cases of Austin Brothers v. Patton, supra, and Miller v. El Paso County, 150 S. W. (2d) 1000, and authorities cited therein.)

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Ardell Williams*

Ardell Williams
Assistant

APPROVED AUG 6, 1943

FIRST ASSISTANT
ATTORNEY GENERAL

AW:db



APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN